[No. A068676. First Dist., Div. Two. Oct. 9, 1996.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

---

**COUNSEL**

Louise H. Renne, City Attorney, Joshua D. Milstein, Deputy City Attorney, and Thomas M. Berliner for Plaintiff and Appellant.

Scott R. Baugh for Defendant and Respondent.

---

**OPINION**

**PHELAN, J.*—**This appeal concerns the ownership of an 80-foot-wide strip of land which the City and County of San Francisco (the City) has used as part of its Hetch-Hetchy underground aqueduct. The trial court determined that the City did not own the land in fee, but had acquired a subsurface easement in the land for its pipeline, and that defendant Union Pacific Railroad Company (Union Pacific) was the fee owner. The City appeals contending the trial court erred in interpreting the original deed and the judge abused his discretion in awarding Union Pacific attorney fees. We affirm the judgment and the award of attorney fees.

### FACTUAL AND PROCEDURAL BACKGROUND

#### *The 1949 Deed*

In 1949, Francis and Beatrice Wrigley, a married couple, conveyed by deed four parcels, including the disputed property (known alternatively as parcel 4 or parcel 114) to the City for installation of water pipelines subject to certain terms and limitations. The deed read that the grantors, "hereby grant to [the City], the following described real property situated in the County of Santa Clara, State of California [parcels 1-4]" subject to enumerated rights and conditions, i.e., "covenants."

The "covenants" imposed conditions on the City's use: (a) reserved to grantors rights to cultivate, harvest crops and use for pasturage, land which

---

*Presiding Justice of the Court of Appeal, First District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

the City did not need to construct, repair, etc. its pipeline; (b) reserved to grantors the rights to build, use and replace fences, streets, and utility lines across the parcel so as not to interfere with the City's pipeline; (c) required the City to give six months' notice prior to commencement of new construction of pipelines and improvements, and (d) imposed subsurface conditions on the depth of the pipeline.[1]

The City paid the Wrigleys $7,960 for the 4 parcels, totaling 8.048 acres.

### The 1951 Deed

In 1951, Union Pacific, through its predecessor in interest Western Pacific (hereafter collectively referred to as Union Pacific), purchased 154.28 acres of property surrounding parcel 4 from the Wrigleys. The deed from the Wrigleys to defendant railroad also transferred all their interest in parcel 4 which had been reserved in the 1949 deed.[2] From 1951 to 1985, Union

---

[1]Following the granting clause, the deed provided in pertinent part: "ALSO the right to cut any and all existing fences and to install gates therein at such points as may be necessary for the convenience of the City in the use of said Parcels 3 and 4 herein conveyed to the City, and the right to protect pipes and other structures or improvements of the City by means of fences or otherwise; provided, however, that the City shall not construct any other fences upon or with respect to said parcels of real property without the consent of the Grantors. . . .

"THIS DEED IS MADE SUBJECT TO THE FOREGOING AND THE FOLLOWING COVENANTS with respect to said Parcels 3 and 4 herein conveyed to the City:

'1. The Grantors are permitted the right to plant, cultivate, irrigate, harvest and retain crops from said parcels of land and to use said land for pasturage, until such time as the City requires said land for construction purposes, and thereafter to cultivate, plant, irrigate, harvest and retain crops from, and to use for pasturage, such parts of said parcels of land as are not actually needed by the City for the construction, maintenance, repair, operation, renewal and replacement of its aqueduct pipe lines and other structures or improvements, appurtenances and appliances; provided, that the Grantors shall not plant any trees on said Parcels 3 and 4.

"2. The Grantors are permitted the right to construct, maintain, use, repair, replace, and renew, over and across said parcels of land, (but not along in the direction of the City's pipe line or lines), fences, roads, streets, earth fills, sewers, water pipes, gas pipes, electric power lines, telephone lines, telegraph lines; provided, however, that the locations and grades of such improvements and structures of the Grantors, and the amount of any earth fill, proposed to be placed on said parcels of real property by the Grantors, shall first be approved by the City's Public Utilities Commission; provided, further, that the Grantors shall not use said parcels of land, or permit the same to be used for any purpose or in any manner which will interfere with, damage . . . in any way any aqueduct pipe lines, and other structures . . . of the City. The Grantors shall install gates in any additional fences which they may construct across said parcels of real property sufficient in width to allow passage of trucks and other equipment."

[2]The pertinent language is as follows: "TOGETHER WITH all of the rights and interests of Grantors with respect to the use of Parcel 4 created, reserved and specified in that certain deed from them to the City and County of San Francisco dated October 31, 1949 . . . . [¶] EXCEPTING from the property first above described, that certain 80 foot strip of land described

Pacific used the land to store equipment, railroad ties, trailers, and roadways without objection from the City.

### The 1952 Condemnation of Parcel 113

In 1952, the City acquired through a stipulation for judgment from the Estate of Eugene Murphy in a condemnation proceeding the adjacent 80-foot-wide strip of land (parcel 113). It is does not appear that defendant was a party to this stipulation. The condemnation decree vested fee title in the City and, by amendment in 1953, included the identical language granting the condemnees the same cross-over and agricultural rights reserved by the Wrigleys in the 1949 deed. The City later paid $1,000 for this 0.935 acre of land. Later, the City and defendant (who succeeded to the rights held by Murphy's estate) agreed to amend the decree to allow construction and operation of a railroad yard, tracks, etc., on the parcel.

### The 1985 Parking Lease

In 1985, Union Pacific wanted to build a parking lot on the surrounding 75 acres it owned and also on parcel 4. Union Pacific needed the parking lot to satisfy its duties itself pursuant to a contract between the defendant and General Motors to store cars transported by rail from Michigan to California. The parking lot was to be used to store the cars pending distribution to dealerships. Because of the deed restrictions, defendant was required to obtain authorization from the City. It was at that time the City claimed it owned fee title to parcel 4 and demanded that only if defendant leased the property from the City, would the City issue the building permits. Since both entities claimed fee ownership to the same parcel, the parties agreed to suspend their dispute and to enter into a 10-year lease.

As part of that agreement, the parties also agreed to have their rights to the property determined by a pending case involving a similar dispute over ownership of another parcel of the City's property, *American Savings & Loan Assn.* v. *City and County of San Francisco* (Dec. 18, 1985) A014913 (nonpub. opn.).

At trial, Richard Tanaka, the City's chief negotiator, testified by deposition that he suggested to Dave Rechtenbach, his counterpart at Union Pacific, that the parties consider the pending *American Savings* case as precedent. "So, I just mentioned to them that we have a case with American

as Parcel Number 4 in the Deed from Beatrice C. Wrigley to the City and County of San Francisco . . . ."

Savings and Loan and that, possibly, when the matter is—when the judgment to that American Savings and Loan matter is rendered . . . it will clarify the issues with UNION PACIFIC as to what rights they had for the use of that right-of-way."

Rechtenbach testified that he had not heard of *American Savings* until Tanaka told him about it. He stated that he ultimately agreed with Tanaka to treat the final decision in *American Savings* as binding in their dispute. As a result, the parties included the following language in the 1985 lease: "WHEREAS, at the time of signing this lease a case is pending in the California Court of Appeal entitled *American Savings & Loan Association* vs. *The City and County of San Francisco*, (No. A014913) that has issues for resolution concerning titles that are similar to the titles of the City and Lessee; and if the Appellate Court case is decided in favor of City, City will have a predecent [*sic*] for asserting rights to use the surface of the premises and the Lessee will probably choose to occupy the premises after the date of the decision under the terms of this lease; and if the case is decided against the City, the Lessee will have a precedent for its position that it is entitled to occupy the premises without a lease. . . ."

In reviewing a similarly worded deed to the one we consider here, the *American Savings* court held that the City purchased a subsurface easement, not a fee interest in the property. Specifically, the court ruled: "[T]he original conveyance was intended to grant to City only those uses incidental to and necessary for the installation and maintenance of a water line and related appurtenances, while reserving to the grantors and their successors the rights to other, compatible uses including the right to use the surface of the property for parking purposes."

Once that decision became final in 1986, Union Pacific informed Tanaka that it was fee owner of the property, and it canceled the lease as it was permitted to do and made no further lease payments. At no time thereafter did Tanaka dispute Union Pacific's claim to ownership.

For the next three years, Union Pacific used the land without interference, until August 1989. At that time, the deputy city attorney, Joshua Milstein, wrote to Union Pacific asserting its ownership over parcel 4. Union Pacific rejected the City's claim and on August 27, 1990, the City filed this instant complaint for declaratory judgment, trespass and to quiet title. The City claimed it acquired fee title to the parcel and that the grantors had reserved a *surface easement* on the land. Conversely, Union Pacific argued that the 1949 deed conveyed only a *subsurface easement* to the City, and the Wrigleys, its predecessors in interest, retained fee title to the parcel.

As proof that the 1949 deed conveyed fee title to the City, the City offered extrinsic evidence of its subsequent conduct and the conduct of others in negotiating the 1951 deed from the Wrigleys to Western Pacific, and the 1952 condemnation decree of adjoining parcel 113. However, no extrinsic evidence of the parties' conduct or their discussions prior to or at the time of the conveyance was offered.

Union Pacific urged the trial court to rely solely on the language of the deed, asserting, "There is no other competent evidence in this case." It argued that the use-restrictive language in the 1949 deed indicates an obvious intent to convey less than a fee interest.

The trial court found for Union Pacific, concluding that it owned a fee interest in the parcel, that the City was bound by the decision in *American Savings* as a matter of both law and contract, and that there was no trespass since Union Pacific's use of the land for a parking lot is provided for by the deed. The court also awarded Union Pacific attorney fees as the prevailing party.

## Discussion

### I.

In a deed, as in any contract, we attempt to ascertain the intent of the parties by first looking to the language in the deed, as construed in light of any extrinsic evidence which may prove a meaning to which the language of the instrument is reasonably susceptible. (*City of Manhattan Beach* v. *Superior Court* (1996) 13 Cal.4th 232, 238 [52 Cal.Rptr.2d 82, 914 P.2d 160] (*Manhattan Beach*); *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521 [67 Cal.Rptr. 761, 439 P.2d 889].) Applying these rules to our facts, and considering the deed as a whole, we conclude that the only interpretation to which the 1949 deed is reasonably susceptible is as a grant to the City of a fee simple in parcel 4, with an easement to Union Pacific for specified uses. Accordingly, we decline to consider the extrinsic evidence. This, in fact, was the very analysis relied upon by Union Pacific at trial.

### A.

The language in the deed states that the Wrigleys "hereby grant to [the City] the following described real property situated in the County of Santa Clara," after which followed a metes and bounds description of four parcels, including parcel 4. The granting language also provided that the City had the right: (1) to cut existing fences to gain access to its property; and (2) to erect

new fences to protect its pipes and other structures; but (3) the City could not construct "other" fences without the grantors' consent.

Although the deed did not contain the words fee, easement, or right of way, it sufficiently evinces the intent to convey a fee simple title to the City and reserve an easement in the grantors. ■ The language quoted above speaks only of a grant of land, and this reference is usually sufficient to convey a fee simple interest in property. (*Manhattan Beach, supra*, 13 Cal.4th at p. 244 [references to land, particularly when described in detail, generally indicate an intent to transfer the entire estate].) "A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." (Civ. Code, § 1105.) This granting clause cannot be construed to describe an easement, which is an *interest in the land* of another, but not an *estate in land*. (See *Concord & Bay Point Land Co.* v. *City of Concord* (1991) 229 Cal.App.3d 289, 295 [280 Cal.Rptr. 623] [deed language unequivocally conveyed fee title and extrinsic evidence was inadmissible].)

However, resolution of this issue does not rest on review of the granting clause alone, and we must examine the remaining provisions to determine if the original parties intended to limit the conveyance to an easement. (*Manhattan Beach, supra*, 13 Cal.4th at pp. 239-240.) Following the granting clause, the deed set forth "covenants" restricting the City's use of parcel 4. These covenants reserved to the grantors the rights: (1) to use the surface for planting, irrigating and harvesting crops in areas not needed by the City to construct, maintain, and repair its pipeline; (2) to construct fences, roads, etc. which cross over the City's pipeline, so as not to interfere or damage the pipeline and attendant structures; (3) required the City to give grantors six months' notice after the installation of the first pipeline before constructing additional facilities; and (4) set forth minimum depth requirements for the pipeline unless that proves to be impracticable, in which case the City may install the pipeline and structures partially above or above the surface.

Language stating that a deed is "subject" to "covenants" typically connotes a reservation of rights in the grantor, rather than a limitation of the estate conveyed. (*Concord & Bay Point Land Co.* v. *City of Concord, supra*, 229 Cal.App.3d at pp. 295-296.) We find nothing else in the deed at issue which gives rise to an inconsistent interpretation.

This was the same conclusion reached, on similar facts, in *City of Los Angeles* v. *Savage* (1958) 165 Cal.App.2d 1 [331 P.2d 211]. The deed conveyed to the city a strip of land to carry electric transmission wires,

which conveyance was made " 'subject to reservations and conditions,' " reserving in the grantor the right to use the land for any lawful purpose not inconsistent with the city's use. The reviewing court determined that the city acquired a fee simple interest in the land and the grantor retained an easement over and upon the property. (*Id.* at pp. 3-4.) The court reasoned that there was no "repugnancy between a conveyance of the fee and a reservation of an easement affecting the land conveyed [citation]; and this is especially true where the reservation specifies that no use of the reserved easement shall be made 'which shall interfere or be inconsistent with the use [of the land] by the grantee.' " (*Id.* at p. 5.)

In *Concord & Bay Point Land Co.* v. *City of Concord, supra,* the deed under review granted the City's predecessor in interest a strip of land for use as a right of way for an electric railroad, but provided that in the event the original grantee failed to use the property as a railroad, the land would revert to the grantor. (229 Cal.App.3d at p. 293.) The court looked only within the four corners of the deed and concluded that the language unambiguously evinced the intent to convey a fee simple subject to a condition subsequent. (*Id.* at pp. 294-295.)

Even if we read the deed language to reflect the parties' intention that the property be used for an aqueduct, as defendant urges, that fact does not convert an unconditional grant into a lesser estate. Thus, in *Machado* v. *Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347 [284 Cal.Rptr. 560], the court construed a grant of a strip of land " 'for a right of way for a standard gauge railroad' " to be a grant of a fee, not an easement. (*Id.* at p. 359.) The court reasoned that the language defining the use was merely descriptive, i.e., a declaration of purpose, and was not intended as a limitation of the grant. (*Id.* at pp. 358-359.)

In *Basin Oil Co.* v. *City of Inglewood* (1954) 125 Cal.App.2d 661 [271 P.2d 73], the court in an opinion authored by then Superior Court Judge Stanley Mosk (sitting as temporary judge), affirmed a trial court finding of a grant in fee to the city where the deed conveyed the land " 'for public street or right-of-way.' " (*Id.* at p. 662.) In holding that this language did not limit the estate granted, the court noted: "But the vast majority of cases hold the transfer of a fee title is not vitiated solely for the reason that the deed contains a clause declaring the purpose for which it is intended the granted premises shall be used. This is particularly indicated where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature for the general public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled." (*Id.* at p. 664.)

As in the decisions discussed above, the rights reserved by the Wrigleys in the 1949 deed and the restrictions imposed on the City's use of the land, do not indicate an intent to convey less than a fee simple interest. To the degree that the reservation language may be read to propose a particular use of the land, this language is descriptive only and not indicative of a limited conveyance. (*Manhattan Beach, supra,* 13 Cal.4th at pp. 243-244.) We conclude that the only reasonable construction is the one which holds that Union Pacific succeeded to an easement for surface use of the land.[3]

The construction of a contract based solely on its terms is a question of law, which we decide de novo, unrestrained by the trial court's judgment. (See *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455].) Interpreting the deed as a whole, we conclude that the grantors intended to convey a fee simple interest to the City.

### B.

But even if we were to consider the deed to be ambiguous, and entertain the extrinsic evidence of subsequent conduct admitted below, this evidence would not support the defendant's conclusions that the parties intended to pass a lesser estate. (See *Manhattan Beach, supra,* 13 Cal.4th at p. 246 [subsequent documents executed by one or more parties support conclusion that a fee interest was conveyed].) To the contrary. The 1951 deed between the Wrigleys and the railroad referred to "all of the rights and interests of Grantors with respect to the use of Parcel 4." That deed also contained the following language: "EXCEPTING from the property first above described, that certain 80 foot strip of land described as Parcel Number 4 . . . ." This language comports with the conclusion that the Wrigleys reserved only an interest in the use of the land, rather than an estate in the parcel conveyed to the City.

The same inference must be drawn from the 1953 amended final decree condemning the adjacent strip of land (parcel 113), in which the City and the grantor, Murphy's Estate, stipulated that the acquisition of parcel 113 conveyed a fee interest to the City, despite virtually identical reservation language which was interpreted to allow Union Pacific use of the land for a railroad yard.

---

[3]In reaching this conclusion, we are mindful that it conflicts with the decision our colleagues in Division One reached in their nonpublished opinion in *American Savings and Loan Assn.* v. *City and County of San Francisco, supra,* A014913. We respectfully disagree with that opinion.

The only evidence outside the deed relied upon by Union Pacific is its claim that, until 1985, the City never protested that it owned the property. This fact does nothing to support defendant's position. Unless the City believed there was some dispute over its ownership in fee and was under some duty to speak out, its silence cannot be used as an estoppel. (*People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 421-422 [196 P.2d 570, 6 A.L.R.2d 1179].) There are no facts supporting such a duty, and we reject defendant's claim.

 But this does not end our inquiry. We must determine what effect, if any, the parties' agreement to be bound by the decision in *American Savings* has on this matter.

## II.

The lease language declares that, since similar issues of title were involved in *American Savings*, the parties agree to treat that decision as "precedent." It will be recalled *American Savings* held, based on similar facts and identical language: (1) that the deed conveyed an easement to the City to construct and maintain its pipeline; and (2) that *American Saving*'s use of the surface for a parking lot was consistent with the rights reserved to its predecessor in interest and this activity did not interfere with the City's easement.

Giving the lease language a commonsense interpretation, it is unmistakable that these two legally sophisticated parties agreed to be bound by that decision and thereby save the time and expense of litigating the instant issue. That would be the only reasonable explanation for including this reference in the lease agreement.

Any ambiguity in the use of the term "precedent" was resolved by the testimony of Tanaka and Rechtenbach. In his deposition testimony, Tanaka testified that he proposed to Rechtenbach to use the *American Savings* decision to "clarify" each parties' rights. Rechtenbach stated he agreed with Tanaka that the decision would resolve their dispute. After Rechtenbach canceled the lease, Tanaka did not contest Union Pacific's right to park cars on the land.

Considering the lease language in light of this testimony, the only logical construction is that the parties intended to be bound by the *American Savings* decision. In so agreeing, each party waived its right to further contest its claim to fee ownership over parcel 4 and the use to which they may properly put the property. This express contractual waiver of rights is enforceable

against the City and the City is forever estopped from claiming a fee interest in parcel 4 or contesting defendant's use of the parking lot.

█ "Waiver is the intentional relinquishment of a *known* right. . . . Waiver requires ' "sufficient awareness of the relevant circumstances and likely consequences." ' " (*Cathay Bank* v. *Lee* (1993) 14 Cal.App.4th 1533, 1539 [18 Cal.Rptr.2d 420], citations omitted.) █ It hardly bears noting that the City certainly was aware the rights it was relinquishing. It was a party to the *American Savings* case, it was aware that both deeds used the identical language of reservation, and it was the party who proposed to rely on that case in the first instance. There is sufficient evidence to support the trial court's finding of "contractual" waiver/estoppel.

Having suffered an adverse decision in *American Savings*, the City is now bound by its agreement to recognize Union Pacific's fee title to the property and defendant's right to use the land for a parking lot.

### III.

█ The City next argues that the trial court erred in awarding defendant's contractual attorney fees. After ruling that Union Pacific was the prevailing party, the court awarded it attorney fees of $11,961 pursuant to Civil Code section 1717 and Code of Civil Procedure section 1021.

The attorney fees clause contained in the 1985 parking lease provided: "If Lessee or City shall bring any action for any relief against the other, declaratory or otherwise, *arising out of this Lease*, including any suit by City for the recovery of rent or possession of the Premises, the losing party shall pay the successful party a reasonable sum for attorneys' fees which shall be deemed to have accrued on the commencement of such action." (Italics added.)

The City argues: (1) this is not an action "on a contract" as required by Civil Code section 1717;[4] and (2) the lease was canceled in 1986 and has no effect. These arguments are meritless.

In its complaint, the City quoted the lease language and sought declaratory relief, alleging that a disagreement has arisen over whether the *American*

---

[4]Civil Code section 1717 provides: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

*Savings* case is binding on the parties. The precedential effect of that earlier case was the moving force behind the lease, which contract language set forth the parties' understanding as to its effect on their instant dispute. To contend, as the City does, that its action for declaratory relief to determine the rights of the parties under that lease language is not "on the contract" is patently absurd. (See *Texas Commerce Bank* v. *Garamendi* (1994) 28 Cal.App.4th 1234, 1246 [34 Cal.Rptr.2d 155] [action for declaration of rights based upon an agreement is "on the contract" within the meaning of Civil Code section 1717].)

Next, the claim that the attorney fee provision cannot be enforced because the lease was canceled is equally unavailing. The lease itself contemplated that its provisions would control the parties' title dispute long after its cancellation. It provided that if the *American Savings* case was decided against the City, the City would not contest Union Pacific's ownership to parcel 4 and defendant could then cancel the parking lease. Union Pacific did just that. The City's assertion that once the lease was canceled the lease terms cannot now be enforced, ignores the plain language of that document and we reject this argument. (See *North Associates* v. *Bell* (1986) 184 Cal.App.3d 860, 865-866 [229 Cal.Rptr. 305] [attorney fees provision in lease which has expired is enforceable].)

The award of attorney fees was entirely proper.

### DISPOSITION

The judgment, including the order awarding attorney fees, is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.