Filed 12/31/13  Smith v. Vista Grande, Inc. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THOMAS G. SMITH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>VISTA GRANDE, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B242332<br>(Super. Ct. No. CV100633)<br>(San Luis Obispo County) |

This appeal concerns a 15-year-old feud about a hot water heater that services Unit 5 in the Vista Grande, Inc., (Vista) housing cooperative. Thomas G. Smith, the resident owner of Unit 5, appeals from the judgment denying him declaratory relief and damages.  The trial court found that the action is barred by a 2008 Mediation Settlement Agreement (MSA) and rejected appellant's claim that Vista is violating the Davis-Stirling Common Interest Development Act (Davis-Stirling Act).  (Civ. Code, § 1350 et seq.)[1]  Vista was awarded $75,046.33 attorney fees on its cross-complaint for breach of the MSA. We affirm.

---

[1] All statutory references are to the Civil Code unless otherwise stated.

*FACTS AND PROCEDURAL HISTORY*

Vista, a cooperative housing corporation formed in 1981, owns and manages two apartment buildings consisting of 17 units in San Luis Obispo.[2] Vista's shareholders live in the apartment units and are required to sign a standard Proprietary Lease when purchasing an interest in the corporation. Appellant is the resident owner of Unit 5 and signed a Proprietary Lease in 1994.

In 1997 the water heater stopped working. Appellant demanded that Vista fix or replace the water heater because the Proprietary Lease stated that Vista would provide maintenance and repairs other than interior painting and decoration of the unit. Vista, as a matter of custom and practice, required that the owner of each unit maintain and repair interior plumbing fixtures, including the water heater. Appellant claimed that the water heater was Vista's responsibility, that Vista's board of directors was not complying with the Davis-Stirling Act (§ 1350 et seq.), and that Vista's governing documents were confusing and conflicted with California law.

The dispute was mediated twice and the subject of two lawsuits. (§ 1369.530.)

*First Mediation*

The first mediation occurred in 2006. Appellant signed a mediation settlement agreement (First MSA) providing that Vista would amend its governing documents in accordance with the Davis-Stirling Act. The mediation settlement agreement included a mutual release of claims.

---

[2] A housing stock cooperative is a development in which a corporation holds title to the entire project and each owner is a shareholder of the corporation and has the right of exclusive occupancy of a portion of the real property, title of which is held by the corporation. (§ 1351, subd. (m); Cont.Ed.Bar (1991) Advising California Condominium and Homeowners Associations § 1:15, p. 16.)

2

*Second Mediation*

Dissatisfied with the proposed amended governing documents, appellant filed a complaint in 2007 for breach of fiduciary duty, injunctive and declaratory relief, and enforcement of the first MSA. (*Smith v. Vista Grande, Inc. et al.,* San Luis Obispo County Sup. Ct., Case No. CV07-0442.) Appellant and Vista mediated the dispute and entered into the 2008 MSA providing for the appointment of a special subcommittee to amend the governing documents. The 2008 MSA included a mutual release and waiver that stated: "This settlement is meant to resolve all matters between the parties so that neither will face a claim from the other at any time in the future arising out of any activities of, actions by, or dealings between these parties."

Vista paid appellant $50,000 and formed a special subcommittee picked by appellant to draft amended governing documents. The subcommittee adopted many of appellant's suggestions and, over the course of 18 months, prepared amended governing documents that were approved by Vista's board and shareholders. The amended governing documents included a revised Proprietary Lease clarifying the maintenance responsibilities of the shareholders. Vista advised shareholders that they could retain their old Proprietary Leases or replace it with the new revised Proprietary Lease. Appellant elected not to sign the revised Proprietary Lease.

*The Present Action for Declaratory Relief*

Appellant's water heater broke again about two years later. Appellant demanded that Vista repair or replace it pursuant to the 1994 Proprietary Lease. On October 26, 2010, appellant sued for injunctive and declaratory relief, and violation of the Davis-Stirling Act. The complaint alleged that Vista was not providing maintenance services as required under the 1994 Proprietary Lease, that Vista was selectively complying with the Davis-Stirling Act, and that the amended governing documents did not change management practices regarding the repair/maintenance of water heaters.

3

The trial court found that the 2008 MSA was ambiguous on "whether the Proprietary Lease, which lies at the very heart of the dispute, is part of the 'governing documents' that were supposed to be amended as part of the settlement. . . ."[3] The trial court received extrinsic evidence on the issue and concluded that the 2008 MSA "was intended by all parties, including [appellant], to put an end to all future litigation over the governing documents between [appellant] and the Association. Moreover, [appellant] presented insufficient evidence to establish that the Association has violated the Davis-Stirling Act or any other provision of applicable law."

*Substantial Evidence*

Appellant argues that the evidence does not support the finding that he waived the right to sue for declaratory relief. The grant or denial of declaratory relief rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of clear abuse of discretion. (*Hannula v. Hacienda Homes* (1949) 34 Cal.2d 442, 448.) "The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such findings under a substantial evidence standard.' [Citation.]" (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

The trial court heard two days of testimony and reviewed appellant's prior complaint, documents and memoranda during the amendment process, the revised covenants, conditions and restrictions (CC&Rs), the amended articles of incorporation and bylaws, the 1994 Proprietary Lease, and

---

[3] Section 1351, subdivision (j) of the Davis-Stirling Act states: "'Governing documents' means the declaration *and any other documents*, such as bylaws, operating rules of the association, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (Italics added.)

4

the revised Proprietary Lease. The court found: "The issue of responsibility for maintenance and repair costs of the water heater and similar appliances has been at the center of this dispute from the very beginning. Those issues are directly and emphatically encompassed within the [2008] MSA and cannot possibly be subject to further litigation."

The evidence clearly supports the trial court's finding that the action is barred by the 2008 MSA. Appellant was paid $50,000 in exchange for a waiver and release that states "each side waives any [and] all claims they may have against each other . . . arising out of the dispute which brought the parties to this mediation, including any claims or potential claims that each may have against each other whether or not included in the Action. [¶] This settlement is meant to resolve all matters between these parties [and is] to assure that this is a final settlement of all claims." Appellant got what he bargained for and is barred from bringing the present action. (§ 1589.) "He who takes the benefit must bear the burden." (§ 3521; see e.g., *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 788-789.)

*Exculpatory Contract That Violates Public Policy*

Relying on section 1668, appellant argues that the release in the 2008 MSA violates public policy.[4] Appellant cites no authority for the proposition that maintenance and repair of his water heater affects a broad public interest within the meaning of *Tunkl v. Regents of California* (1963) 60 Cal.2d 92, 98-101. The question of whether a general release "affects the public interest, and is thus void as a matter of public policy, requires analysis of the transaction giving rise to the contract - *not* the allegedly negligent conduct by the

_____

[4] Section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

5

party invoking the release. [Citation & fn. omitted.]" (*Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 663, 670.)

The 2008 MSA was negotiated by appellant and his attorney to resolve an ongoing dispute about the governing documents and maintenance/repair of the Unit 5 water heater. Vista paid appellant $50,000 in exchange for a release and waiver of known and unknown claims. Where, as here, a general release explicitly covers unknown or unforeseen claims and specifically waives the provisions of section 1542, it is "completely enforceable and act[s] as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he [or she] did not intend to release certain types of claims. [Citation.]" (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1053.)

Appellant contends that the release does not apply to similar claims arising after the 2008 MSA. "If an argument such as this were given currency, a release could never effectively encompass unknown claims. A releasor would simply argue that a release of unknown or unsuspected claims applied only to known or suspected claims, making it ineffective as to unknown or unsuspected claims." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1167.)

Citing *Cohen v. Kite Hill Community Association* (1983) 142 Cal.App.3d 642, appellant argues that a release of claims for willful breach of fiduciary duties violates public policy. But appellant is not suing for breach of fiduciary duty. Nor are exculpatory clauses in a release or an association's governing documents per se invalid.

In *Franklin v. Marie Antoinette Condominium Owners Association* (1993) 19 Cal.App.4th 824, an exculpatory clause in the association's CC&Rs relieved the homeowner's association of its contractual liability to pay for water damage caused by a central plumbing leak. The Court of Appeal concluded that the exculpatory clause did not violate section 1668. (*Franklin*, *supra*, at pp. 833-834.) "By reducing the Association's risk of liability, the condominium

6

owners have reduced their own risk. The condominium owners are, after all, the ones who are assessed to pay for improvements, insurance premiums, liability judgments not covered by insurance, and the like. . . . While plaintiff may bear the loss in this case, she may benefit in the next. As was pointed out by our Supreme Court, 'no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . .' [Citation.]" (*Ibid.*, quoting *Tunkl v. Regents of University of California*, *supra*, 60 Cal.2d at p. 101.)

<em>Davis-Stirling Act</em>

Appellant argues that the trial court erred in not granting declaratory relief on whether Vista must comply with the Davis-Stirling Act. The trial court found that Davis-Stirling applies "to some extent." Appellant complains that the trial court did not address certain core issues such as whether Vista's election procedures comply with the Davis-Stirling Act.[5] The argument presumes that amendment of the governing documents requires the unanimous approval of the shareholders. In *Villa de Las Palmas Homeowners Association v. Terifaj* (2004) 33 Cal.4th 73, 83-84, our Supreme Court held that amendments under the Davis-Stirling Act can be approved by a majority of the shareholders

---

[5] Appellant's prior complaint (Case No. CV007-442), which was the basis for the 2008 MSA and release, alleged a litany of Davis-Stirling Act issues regarding unenforceable Proprietary Leases and bylaws, restrictions on the transfer/sale of shareholder interests, lease and subletting restrictions, the right to access Vista's minutes and records, conflicts in the bylaws and Propriety Leases regarding the preparation and approval of pro forma budgets, how assessments are set, association reserve study requirements, the annual disclosure of Vista's insurance, the enforcement of governing documents and alternative dispute resolution procedures, lien collection, voting procedures, how operating rules are to be changed or amended, the review of applications for improvements or physical changes to a unit, maintenance and repair responsibilities, and tax and accounting issues. The trial court found that the 2008 MSA was intended to settle all of those claims.

regardless of when a shareholder purchases his or her unit. If the rule were otherwise, a small number of holdouts could block "'changes regarded by the majority to be necessary to adopt to changing circumstances and thereby permit the community to retain its vitality over time.' [Citation.]" (*Id.*, at p. 84.)

The same principle applies here. Trivial deviations in the election procedure do not invalidate shareholder approval of the amended governing documents. (*Mission Shores Assn. v. Pheil* (2008) 166 Cal.App.4th 789, 798.) Amended governing documents are valid and enforceable where, as here, they are adopted in good faith and in substantial compliance with the Davis-Stirling Act. (§ 1357.110, subd. (d).)

At the conclusion of the trial, appellant urged the court to declare that Vista is a stock cooperative and that all of the provisions of the Davis-Stirling Act that apply to stock cooperatives apply to Vista. The trial court asked for clarification because "[s]ome provisions [of the Act] apply and some don't. So if you want a declaration from me, I need a live target."

Appellant failed to clarify how or in what manner Vista was not complying with the Davis-Stirling Act. The trial court reasonably concluded there was insufficient evidence to grant declaratory relief and that generalized relief would be improper. (Code Civ. Proc., § 1061; see, e.g., *Mission Shores Assn. v. Pheil*, *supra*, 166 Cal.App.4th at p. 798.) A trial court may not grant declaratory relief on hypothetical facts or render advisory opinions. (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117.)

*Validity of the 1994 Proprietary Lease*

Appellant argues that the trial court failed to rule on whether the 1994 Proprietary Lease was superseded by the amended governing documents which were approved by Vista's board and shareholders. Appellant requested that the court declare that his 1994 Proprietary Lease is still in force and effect. The trial court found that the 2008 MSA and release barred the action.

8

"[Appellant] cannot now bring suit to obtain declaratory relief about the validity of the 1994 propriety lease . . . ."

Appellant asserts that he can sue on behalf of Audry Smith who cosigned the 1994 Proprietary Lease. Declaratory relief is not, however, available to a nonparty. (*Winter v. Gnaizda* (1979) 90 Cal.App.3d 750, 755-756.) Had appellant raised the claim in the trial court, it would have been denied. The 2008 MSA states that appellant settled the dispute on behalf of himself and "co-owners." It provides that the MSA is binding upon "the parties as well as their agents, officers, personal representatives, assigns, associated entities, successors in interest and those who act in concert with the parties."

*Attorney Fees*

Vista was awarded $75,046.33 attorney fees based on the attorney fee provision in the 2008 MSA which provides "in the event a party retains an attorney to enforce the terms of this Agreement, the successful party in such dispute shall be entitled to recover its actual attorney's fees . . . ." Appellant contends that the 2008 MSA was superseded by the amended governing documents which provide that in any action arising out of the rights and obligations the parties shall bear their own attorney fees.

Appellant's assertion that the 2008 MSA cannot be enforced since the amended governing documents were approved ignores the plain language of the 2008 MSA. Appellant breached the 2008 MSA by filing the present action to resurrect the long-settled water heater, Proprietary Lease, and Davis-Stirling Act issues. The trial court awarded attorney fees on the ground that "[t]he pivotal and determinative issue at trial was the effect of the 2008 MSA. [Vista] prevailed on this point through the cross-complaint, which was specifically directed at enforcement of the release contained in the 2008 MSA." The court did not err in awarding Vista attorney fees. (§ 1717; see, e.g., *City and County of San Francisco v. Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 1000.)

9

The judgment is affirmed.  Vista shall recover its costs and reasonable attorney fees, in an amount to be determined by the trial court on noticed motion.

NOT TO BE PUBLISHED.


O'DONNELL, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo
_____


Thomas G. Smith, Neil S. Tardiff and Dustin M. Tardiff, for Plaintiff and Appellant.

John F. Hodges, for Defendant and Respondent.