[No. B150284. Second Dist., Div. Four. Sept. 9, 2002.]

GARY M. SEVERNS, Plaintiff and Respondent, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Appellant.

## COUNSEL

Lowell & Robbin, David S. Robbin and Mark M. Clairmont for Defendant and Appellant.

Bidna & Keys and Jon A. Longerbone for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Gary M. Severns (plaintiff) brought a quiet title action against Union Pacific Railroad Company (Union Pacific). The bone of contention was

interpretation of a 1901 transaction in which Frederick and Elisabeth Bluemle granted an interest to the California Pacific Railway Company (California Pacific Railway). In essence, plaintiff alleged that the 1901 conveyance transferred only an easement, not a fee interest; that he was the successor-in-interest to the Bluemles and therefore the owner of the land (servient estate) burdened by the easement; and that the easement had been terminated by abandonment. He therefore sought to quiet title as against Union Pacific, the successor-in-interest to the California Pacific Railway.

The matter was tried to the court on a statement of undisputed material facts. The court found the conveyance was ambiguous and therefore considered extrinsic evidence to interpret it. The trial court ultimately concluded that the 1901 conveyance created only an easement; that the easement had been extinguished by abandonment; and that under the doctrine of marginal streets, plaintiff was entitled to have title quieted on his behalf to the abandoned railroad easement abutting his land. The trial court therefore entered judgment in favor of plaintiff. This appeal by Union Pacific follows.

We reverse. The trial court erred in first concluding the 1901 deed was ambiguous and in then using extrinsic evidence to interpret it. The deed is unambiguous. It conveys a fee simple subject to a condition subsequent: the realty can return to the grantors or their assigns if the railroad ceases for six months to use the property as a right-of-way. Given it is undisputed that said condition occurred, plaintiff, as successor-in-interest to the original grantors, had a right to exercise a power of termination to reclaim the land. However, the Marketable Record Title Act (Civ. Code, § 880.020 et seq.) requires plaintiff or his predecessor(s)-in-interest to record in a timely way an intent to preserve the future interest. No one made the necessary recordation. We reject plaintiff's contention that the Marketable Record Title Act cannot constitutionally be applied to him. The statutory scheme does not violate the contract clause or due process. The failure to comply with that statutory requirement resulted in the expiration of the power of termination and therefore barred plaintiff's action. Accordingly, we reverse the judgment.

STATEMENT OF FACTS

In 1901 the Bluemles executed the following handwritten deed.

"This indenture, made this 4th day of December A.D. 1901 between Frederick Bluemle and Elisabeth Bluemle his wife, of Los Angeles County California, the parties of the first part, and the California Pacific Railway Company, a corporation, the party of the second part.

"Witnesseth: That the said parties of the first part for and in consideration of the sum of five dollars ($5.00) in U.S. Gold Coin, or equivalent to them in hand paid by the said party of the second part, the receipt of which is hereby acknowledged do by these presents grant, bargain, sell, convey, and confirm unto the said party of the second part and to its assigns forever, all that certain lot parcel or tract of land situate in Los Angeles County, California, and more particularly described as follows, viz:

"A strip of land sixty (60) feet wide West of the West line of the Old Tomlinson Stage Road (also recently, locally called 'Vermont Avenue'), and West of adjoining parallel to, and along the entire length of the East line of lot three (3) of the Maria Machado de-Rocha Tract-Rancho San Pedro as per map recorded in Book 6 Page 161 of the Miscellaneous Records of Los Angeles County, California and containing in all, two and eighty-six hundredths (2.86) acres, more or less.

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions remainder and remainders, rents, issues and profits thereof.

"To Have and to Hold all and singular, the said premises, together with the appurtenances unto the said party of the second part and to its assigns forever.

"Note. [I]t is understood that the above described strip of land herein conveyed, shall be for a right of way, and that said second party, or its assigns shall construct over and along same, a first class electric railway, and will operate said railway with a service of not less than ten daily trains and that local trains or cars, shall stop, for passengers desiring to get on or off the cars at the south line of said right of way.

"Should said railway after being completed and in operation cease thereafter to be operated for a period of six months, then said right of way herein conveyed shall revert to the parties of the first or assigns.

"It is mutually understood and agreed upon by both parties to this indenture, that the existing three wire fence along the east line of said right of way hereunder conveyed shall, for valuable consideration, already received by the said parties of the first part, be move[d] and set up in first class order along the west line of said right of way within thirty days from the date of this indenture by said first parties, their agents or assigns, and free of all expense to the party of the second part, or its assigns, and that the said fence

shall, from the date of this indenture belong to the party of the second part or its assigns."

In 1912, the Bluemles conveyed a portion of their land to Lucile Brown, excepting various earlier conveyances. Brown subsequently subdivided her parcel into various lots.

In 1977 and 1978, Frampton Properties, a partnership in which plaintiff held a 25 percent interest, obtained nine of the subdivided lots originally belonging to Brown.

In 1994, Union Pacific commenced removal of the railroad tracks on the right-of-way.

In April 1999, Frampton Properties quitclaimed to plaintiff all of its interest in the nine lots.

In October 1999, plaintiff initiated this quiet title action.

## DISCUSSION

### A. *Interpretation of the Deed*

 The primary objective in interpreting a deed is to ascertain and carry out the intent of the parties. (*Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 352 [284 Cal.Rptr. 560].) If the deed is ambiguous on its face, extrinsic evidence is admissible to interpret it. (*Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1132-1133 [235 Cal.Rptr. 857].) In this case, the trial court found the deed was ambiguous and consequently considered extrinsic evidence to ultimately decide the interest conveyed was an easement.[1]

 Union Pacific first contends the use of extrinsic evidence was improper because the 1901 deed is not ambiguous. We agree. The deed is not ambiguous. As we now explain, it is essentially identical to the deed analyzed in *Concord & Bay Point Land Co. v. City of Concord* (1991) 229 Cal.App.3d 289 [280 Cal.Rptr. 623] (*Concord*). ■ ■ Relying

---

[1]The extrinsic evidence included the 1861 Railroad Act and the 1912 deed from the Bluemles conveying a portion of their land to Lucile Brown.

upon only the language of the deed and eschewing any statutory presumptions[2] or extrinsic evidence (*Concord*, at p. 294), the *Concord* court held the deed conveyed a fee subject to a condition subsequent.

In this case, the granting clause recites the Bluemles "grant, bargain, sell, convey, and confirm" the designated parcel. To convey a fee, all that is required is the word "grant." (*Schlageter v. Cutting* (1931) 116 Cal.App. 489, 498 [2 P.2d 875].) The language used here is the traditional language for a conveyance of a fee and is identical to the language in the *Concord* deed. (*Concord, supra,* 229 Cal.App.3d at p. 293.) Significantly, the granting clause does *not* restrict the grantee to any particular use. Furthermore, it contains language of inheritance ("to its successors and assigns forever"), language indicating a fee conveyance. (*Id.* at pp. 293-294.)

The next paragraph contains a detailed description of the conveyance. The beginning phrase, "[a] strip of land sixty (60) feet wide"—language virtually the same as that employed in *Concord*—indicates the land itself is being conveyed, not merely a nonpossessory right to use the land. (*Concord, supra,* 229 Cal.App.3d at p. 294.) As our Supreme Court has indicated, "[r]eferences to 'land,' particularly in conjunction with precise and technical designation of the location, generally indicate an intention to transfer the entire estate not just a limited right to pass over the property." (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 244 [52 Cal.Rptr.2d 82, 914 P.2d 160] (*Manhattan Beach*).)

The following paragraph adds that the grant includes all "tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." As the *Concord* court noted, this language "is very likely to be surplusage where an easement alone is conveyed." (*Concord, supra,* 229 Cal.App.3d at p. 295; see also *Johnson v. Ocean Shore*

---

[2]"When the intent of the parties can be derived from the plain meaning of the words used in the deed, the court should not rely on the statutory rules of construction." (6 Miller & Starr, Cal. Real Estate (3d ed. 2000) Easements, § 15:16, p. 63.)

The two pertinent statutes would, in any event, establish a fee was conveyed. The first is Civil Code section 1105, which provides: "A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." The second is Civil Code section 1069, which provides, in pertinent part: "A grant is to be interpreted in favor of the grantee . . . ."

Civil Code section 801 reads, in part: "The following land burdens, or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements: [¶] . . . [¶] 4. The right-of-way." Seventeen other examples of easements are listed. Contrary to what plaintiff appears to suggest, this does not create a presumption of an easement when a deed uses the phrase "right-of-way." Civil Code section 801 is simply a statutory listing of different types of easements.

*Railroad Co.* (1971) 16 Cal.App.3d 429, 434 [94 Cal.Rptr. 68].) Hence, it conveys a fee interest.

Next comes the habendum clause ("To Have and to Hold"). This simply repeats the language of inheritance found in the granting clause.

It is not until the following three paragraphs that *any* reference to a right-of-way appears. Introduced by the word "Note," the conveyance states the understood purpose of the conveyance: construction of a railroad right-of-way. Details of the use (number of trains, location of stops) are set forth. These references to a right-of-way do not suggest an easement. They simply describe the purpose to which the land will be put. In this context, the term "right-of-way" describes " 'that strip of land upon which railroad companies construct their road bed, and, when so used, the term refers to the land itself, not the right of passage over it.' [Citation.]" (*Concord, supra,* 229 Cal.App.3d at p. 295; see also *Machado v. Southern Pacific Transportation Co., supra,* 233 Cal.App.3d 347, 359.)

The conveyance then recites what will happen if railroad operations cease for six months: the right-of-way *reverts* to the grantors or their assigns. This reference to a reversion is language normally associated with grant of a fee. "[A]n easement which is abandoned by nonuse or use outside its limitations does not 'revert' to the grantor, it is simply extinguished. [Citation.]" (*Concord, supra,* 229 Cal.App.3d at p. 295.) In other words, this language shows the grantors intended to convey a fee interest subject to a condition subsequent that if the grantee failed to use the land for a railroad right-of-way, the grantors could reclaim the property.

In sum, there is no ambiguity in this conveyance. The *Concord* court's conclusion is equally applicable here. It wrote: "The deed conveys an estate of inheritance in the land itself, unrestricted except for a future condition, upon the failure of which the property conveyed reverts to the grantor. This is a fee simple subject to a condition subsequent; the reversionary interest held by the grantor is a power of termination. [Citations.]" (*Concord, supra,* 229 Cal.App.3d at p. 295.)

Plaintiff's arguments to the contrary are unavailing. In particular, he relies upon *Manhattan Beach, supra,* 13 Cal.4th 232, in which our Supreme Court concluded the deed in question was ambiguous so that the use of extrinsic evidence was proper to resolve the ambiguity.

There is a telling difference between the deed here and the deed reviewed in *Manhattan Beach*. In *Manhattan Beach*, the granting clause included a reference to a railroad right-of-way. The deed stated, in part, that the

grantors, in return for $1, did "remise[], release[] and quit-claim[]" to a railway the right-of-way for the construction, maintenance, and operation of a railroad over a designated parcel. (*Manhattan Beach, supra,* 13 Cal.4th at p. 236.) The juxtaposition of the conveyance by quitclaim of the grantor's entire interest with a statement that it was for a right-of-way created an ambiguity as to whether an easement (a mere right of use) was conveyed as opposed to a fee interest. Here, on the other hand, the language about right-of-way does not appear until the sixth paragraph of the deed. It appears after the language of conveyance, after the description of the "strip of land," after the language of inheritance, and after the habendum clause. And it is in the seventh paragraph that the reference to the consequence of a failure to continue to use as a right-of-way appears: the reversion to the grantors. Consequently the references in this deed to a right-of-way merely describe the purpose of the conveyance; the references do not indicate that a right to use (an easement) was conveyed.

Plaintiff next urges application of the general rule that conveyance of a right-of-way to a railroad is usually construed as conveyance of an easement, not a fee. This approach is not persuasive for two reasons.

The first reason is that the rule is triggered " '*when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad. . . .*' " (*Manhattan Beach, supra,* 13 Cal.4th at pp. 240-241, italics added.) In that instance, some authorities have concluded, " 'the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title. [Citations.]' " (*Ibid.*) As set forth above, the granting clause in this deed is absolute on its face; it contains no references to right of way.

The second reason is that while the *Manhattan Beach* court recognized that rule, it also noted that a plethora of cases had decided that with respect to railroads, that phrase sometimes describes " 'not only the easement, or special and limited right to use another person's land, but as well the strip of land itself that is occupied for such use. . . . [Citations.]' " (*Manhattan Beach, supra,* 13 Cal.4th at p. 241.) The court specifically declined to resolve this apparent conflict in case law interpretation. It wrote: "In the context of this case, it is thus unnecessary to assess whether it remains the 'general rule' that the grant of a railroad right-of-way conveys only an easement." (*Id.* at p. 240, fn. 7.)

Plaintiff next argues that the presence of what he characterizes as nominal consideration ($5 in gold coin) creates an ambiguity as to the nature of the interest conveyed. This argument puts the cart before the horse. ■ As explained by the *Concord* court, "[w]here an instrument is ambiguous as to

whether a fee or easement was intended, the absence of monetary consideration or its nominal value suggests only an easement was intended. [Citations.]" (*Concord, supra,* 229 Cal.App.3d at p. 294.)[3] Here, because there is no ambiguity in the deed, the extent of the consideration is a nonissue.

In any event, the recited payment is not as significant as plaintiff claims. From the face of the deed one cannot determine with certitude whether the amount recited was the true consideration for the grant. (*Machado v. Southern Pacific Transportation Co., supra,* 233 Cal.App.3d 347, 359; *Warren v. Atchison, T. & S. F. Ry. Co.* (1971) 19 Cal.App.3d 24, 35 [96 Cal.Rptr. 317] ["[W]hether the recited consideration was the true consideration would require the introduction of extrinsic evidence"].) And as the *Manhattan Beach* court explained: "[A]ssuming the recitation in the deed reflects the actual bargained for exchange, the grantor may well have had more interest in the relative benefits it expected to derive from the railway's presence." (*Manhattan Beach, supra,* 13 Cal.4th at p. 245.) In this case, given the provisions of the deed requiring the railroad to operate "not less than ten daily trains and that local trains or cars, shall stop, for passengers desiring to get on or off the cars at the south end of said right of way," it is reasonable to infer the Bluemles extracted these commitments to enhance the value of their land which was subsequently sold and subdivided.

Lastly, we address plaintiff's reference to the Railroad Act of 1861 and the 1901 articles of incorporation for the California Pacific Railway.[4] In essence, the 1861 act provided a railroad could only acquire real property for the purpose of building, completing, and maintaining a railroad. California Pacific Railway's articles of incorporation similarly stated the purpose of the corporation was to acquire property to construct, operate, and maintain a railroad. Putting aside the fact that, as explained above, the 1901 deed is unambiguous so that resort to other sources to interpret it is not necessary, the provisions of the 1861 act and the railroad's articles of incorporation beg the question whether or not the deed under review conveyed an easement or a fee. As plaintiff concedes, the act's language did not preclude any railroad from holding land in fee. Given that it is apparent the original parties intended the interest conveyed, be it fee or easement, to be used as a railroad right-of-way, the 1861 act and the articles of incorporation add nothing to the analysis.

---

[3]See also *Tamalpais etc. Co. v. N. W. Pac. R. R. Co.* (1946) 73 Cal.App.2d 917, 927-928 [167 P.2d 825] ("*If a deed is ambiguous* as to whether it conveys a fee subject to a condition subsequent or an easement . . . the fact . . . only a nominal monetary consideration was paid for the grant is a factor of considerable importance indicating that the grant conveys an easement and not a limited fee" (italics added)).

[4]These items are in the record on appeal because the trial court granted plaintiff's request to take judicial notice of them.

Our conclusion remains: the 1901 deed unambiguously conveyed a fee simple subject to a condition subsequent.

### B. *The Marketable Record Title Act*

*Legal Background*

In 1982, the Legislature enacted the Marketable Record Title Act (the Act). (Civ. Code, § 880.020 et seq.)[5] It became operative on January 1, 1983. "[T]his comprehensive statute was the product of years of research by the Law Revision Commission. [Citation.]" (*Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 130, fn. 13 [3 Cal.Rptr.2d 275].)

The California Law Revision Commission surveyed the different statutory schemes enacted in other states requiring recordation of future interests[6] and recommended: "The power of termination should expire after a period of 30 years unless within that time the holder of the power extends the period by recording a notice of intent to preserve the power; an extension should be good for 30 years at a time. There should be a five-year grace period for holders of powers of termination to record a notice of intent to preserve powers that would be immediately or within a short period affected by enactment of the statute. [¶] This scheme will ensure that only those powers of termination will burden property for an extended period that a person has an active interest in preserving. It will also keep record ownership of the power current and help in ascertaining current holders of the power. The scheme has the additional virtue of minimizing potential problems of constitutionality inherent in applying an absolute limitation on powers without the option of extension." (Recommendation Relating to Marketable Title of Real Property, *supra*, 16 Cal. Law Revision Com. Rep. (1981) pp. 421-422, fns. omitted.) The statute would implement the policy that "the public has an interest in free marketability and use of property and in limiting the restricting influence of the 'dead hand' to no more than one generation in the future." (*Id.* at p. 421, fn. omitted.)

The Legislature enacted the recommendation. It expressly declared: "Interests in real property . . . created at remote times, whether or not of record, often constitute unreasonable restraints on alienation and marketability of real property because the interests are no longer valid or have been

---

[5]All further statutory references in this portion of our opinion are to the Civil Code.

[6]The future interest attached to a fee simple subject to a condition subsequent had been known as a right of entry. The future interest attached to a fee simple determinable had been known as a possibility of reverter. The Legislature adopted the recommendation of the Law Revision Commission to abolish this differentiation and instead classify both as a power of termination. (Recommendation Relating to Marketable Title of Real Property (Nov. 1981) 16 Cal. Law Revision Com. Rep (1981) p. 423; §§ 885.010 and 885.020.) For purposes of clarity, we will use the phrase "power of termination."

abandoned or have otherwise become obsolete. [¶] . . . Such interests . . . produce litigation to clear and quiet titles, cause delays in real property title transactions, and hinder marketability of real property. [¶] . . . Real property title transactions should be possible with economy and expediency. The status and security of recorded real property titles should be determinable to the extent practicable from an examination *of recent records only.*" (§ 880.020, subd. (a)(2), (3), & (4), italics added.)

To implement this policy, "the Legislature adopted a recordation requirement for certain types of interests, including powers of termination. (§ 885.010 et seq.) Failure to record interests within a given period of time results in expiration of the interest. These times for expiration 'are absolute and apply notwithstanding any disability or lack of knowledge of any person . . . .' (§ 880.250, subd. (a).) [¶] An interest may be preserved by the timely recordation of a notice of intent to preserve the interest and these notices may be given consecutively: Perpetuity of interest is not prohibited. [Citations.] [¶] If the period to record the notice expires within five years after the operative date of the statute, the period is extended until five years after the operative date. (§ 880.370.) A power of termination expires at the later of: (1) 30 years after recordation of the instrument evidencing the power; (2) 30 years after recordation of the last notice of intent to preserve the power. (§ 885.030.)" (*Walton v. City of Red Bluff, supra,* 2 Cal.App.4th 117, 128, fn. omitted.)

*Discussion*

The original deed from the Bluemles to California Pacific Railway conveying the fee simple subject to a condition subsequent and creating the power of termination was recorded in 1901. Because the 30-year period to record the intent to preserve the power of termination would have expired long before the statute's enactment, any successor-in-interest to the Bluemles was entitled to the five-year grace period provided by section 880.370. Because the Act became effective on January 1, 1983, that individual or entity had until January 1, 1988, to record a notice of intent to preserve the future interest (power of termination). It is undisputed that neither plaintiff nor his predecessor(s)-in-interest recorded a notice of intent. This means the power to terminate has expired so that plaintiff's action is barred.[7] To defeat that result, plaintiff contends: "If the Marketable Record Title Act applies in

---

[7]Section 885.060 provides, in pertinent part: "(a) Expiration of a power of termination . . . *makes the power unenforceable and is equivalent for all purposes to a termination of the power of record and a quitclaim of the power to the owner of the fee simple estate, and execution and recording of a termination and quitclaim is not necessary to terminate or evidence the termination of the power.* [¶] (b) Expiration of a power of termination pursuant to this chapter terminates the restriction to which the fee simple estate is subject and makes

this case, plaintiff's power of termination expired in 1988, well before the commencement of this action [in 1999]. However, the Act cannot constitutionally be given retroactive application in this case. [¶] Under both state and federal constitutions, the legislature may not enact laws impairing the obligation of contracts or which take property without due process of law. [¶] . . . [¶] [T]he reverter in this case had not matured as of January 1, 1988, the outside date for recording a notice of intent, nor could anyone have known prior to the cut-off date who would be the parties in interest at the time when the reverter took effect because that event did not occur until November 1994 [when Union Pacific abandoned the right-of-way]."[8] These constitutional arguments have not yet been addressed by a published opinion from a California appellate court.[9] We conclude the arguments lack merit.

## The Contract Clause

Article I, section 10 of the federal Constitution provides in part: "No state shall . . . pass any . . . law impairing the obligation of contracts." Article I, section 9 of our state Constitution contains a similar provision: "A . . . law impairing the obligation of contracts may not be passed."

---

the restriction unenforceable by any other means, including, but not limited to, injunction and damages."

[8]One of the disputed issues of law the parties presented to the trial court was, "If the First Bluemle Deed conveyed a fee, does the Marketable Title Act apply so as to preclude plaintiff's quiet title action?" Both parties presented legal memoranda addressing the constitutionality of the Act. Because the trial court concluded (erroneously) that the deed conveyed an easement, it was not required to decide this issue. Nonetheless, on this appeal the parties have briefed the issue and asked us to decide it if necessary to disposition of the appeal. Because we have concluded the 1901 deed conveyed a fee simple subject to a condition subsequent, we address and decide this pure question of law.

[9]*Walton v. City of Red Bluff, supra,* 2 Cal.App.4th 117, first suggested in dicta the statute could withstand a due process attack (*id.* at p. 132) but then noted: "As a determination of the constitutionality of the statute is unnecessary to our decision, we express no opinion on that issue but note that there are proper concerns of notice." (*Id.* at p. 134, fn. 17.) The issue of notice which concerned the court was whether it is sufficient to employ what it characterized as "the legal fiction that all persons are presumed to know the law" in order to find that a holder of a future interest had constructive notice of the Act so that the owner's failure to comply with its provision results in an expiration of the future interest. (*Id.* at p. 133.) On this appeal, plaintiff notes that concern but makes no further argument to support what, in effect, would be a rule requiring *actual* notice be given to each and every holder of a future interest before the Act could apply to him or her. We decline to impose such a requirement in this case because it would run afoul of the bedrock principle that "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." (*Texaco, Inc. v. Short* (1982) 454 U.S. 516, 532 [102 S.Ct. 781, 793, 70 L.Ed.2d 738] [upholding state statute requiring recordation of dormant mineral use; otherwise the interest lapses and reverts to the current surface owner of the property]; see also *Bennett v. Whitehouse* (W.D.Okla. 1988) 690 F.Supp. 955, 960-961 [rejecting contention that Oklahoma Marketable Record Title Act violated due process because statute did not require specific notice to affected property owners].)

The contract clause is triggered in this case because of the dual nature of the 1901 deed. On the one hand, it is a conveyance of a real property interest: a fee simple subject to a condition subsequent. On the other hand, it is a contract: a conveyance supported by consideration, which gives the grantors the power of termination upon occurrence of the condition subsequent (failure to use the land for a railroad right-of-way). In essence, plaintiff contends his contractual right to exercise his future interest has been unconstitutionally impaired because the Act requires a holder of a future interest to record within a designated time period an intent to preserve it and the failure to timely record results in an expiration of the interest. Plaintiff's contention lacks merit.

 For one thing, plaintiff fails to make the distinction between an obligation and a right. The Act does not change any obligations in the contract (e.g., convey the land and pay the consideration). Instead, it merely affects the manner in which a party can exercise the right or remedy granted in the form of the future interest. In that regard, Witkin explains: "Parties to a contract have no vested right in the particular remedies or methods of procedure existing at the time of their agreement. The Legislature cannot take away all remedies, nor so substantially restrict the remedies as practically to destroy the right; but an ordinary change in procedure which alters the remedy for breach of a contract is valid though retroactively applied to existing contracts. [Citations.]" (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1081, p. 652.)

At bench, the new law does not abolish or take away the right to exercise a future interest. Instead, it merely adds a procedural requirement to the exercise of that right: timely recordation. The imposition of the requirement will not run afoul of the constitutional provision if it addresses a legitimate state interest and is reasonable and appropriate. (*Home Bldg. & L. Assn. v. Blaisdell* (1934) 290 U.S. 398, 439 [54 S.Ct. 231, 240, 78 L.Ed. 413, 88 A.L.R. 1481].) Or stated another way, "a statute limiting the time for assertion even of preexisting property or contract rights is not unconstitutional provided it allows a reasonable time after its enactment for the assertion of those rights. [Citations.]" (*Selectmen of Town of Nahant v. United States* (D.Mass. 1968) 293 F.Supp. 1076, 1078.)

The Law Revision Commission explained the public policy behind requiring a holder of a future interest such as a power of termination to record an intent to preserve it or face its expiration. It wrote that these future interests "seriously impair marketability of property [and] restrain alienability and sometimes the economic use of property as well[.] [¶] These problems are aggravated by the fact that there is no limitation on the duration of [a power

of termination] as there is on other future interests in property. Because reversionary interests are considered to be 'vested,' the Rule Against Perpetuities does not apply. This feature, combined with the fact that [the power of termination] appear[s] to be devisable and descendable, can result in dispersion of [the power] among unknown or unavailable owners. A person seeking to assemble a marketable title to the property may find that the interests have considerable nuisance value or that it is impossible to obtain quitclaim deeds from all owners of the interests. [¶] . . . Legal scholars generally concur that in order to relieve the marketability problems created by [a power of termination], legislation limiting their duration is necessary." (Recommendation Relating to Marketable Title of Real Property, *supra*, 16 Cal. Law Revision Com. Rep. (1981) pp. 419-420, fns. omitted.) These are certainly legitimate state interests and plaintiff does not contend to the contrary.

In this case, the statutory scheme gives a holder of a future interest five years from its effective date to record an intent to preserve the power. The burden is minimal: simply record. The time period accorded to complete this minimal task is substantial: five years. Given the state interests furthered by this Act, the recordation requirement is reasonable. This conclusion is consistent with that reached by most other state courts which have considered the constitutionality of very similar statutes.

For instance, in *Cline v. Johnson County Bd. of Ed.* (Ky. 1977) 548 S.W.2d 507 [87 A.L.R.3d 1007], the state statute required recordation within five years of a future interest; otherwise the interest ceased to be valid or enforceable. The Supreme Court of Kentucky held the statute did not violate the state constitution's contract clause. It reasoned: "[The legislature] could properly determine that the economic significance of these [future] interests is so outweighed by the inconvenience and expense cause[d] by their continued existence for unlimited periods of time that the only constitutional problem is the reasonableness of the method chosen to deal with them. [A]llowing five years in which to file a preservation notice [is] entirely reasonable." (*Id.* at p. 508.)

And in *Tesdell v. Hanes* (1957) 248 Iowa 742 [82 N.W.2d 119], the 1950 statute barred actions on claims to realty existing before 1940 unless a notice of interest was filed by 1951. The Supreme Court of Iowa upheld this statute, finding the one-year period to be a reasonable time frame. (*Id.* at p. 123; see also *Amana Soc. v. Colony Inn, Inc.* (Iowa 1982) 315 N.W.2d 101, 111-113 [no contract clause violation]; *Hiddleston v. Nebraska Jewish Education Society* (1971) 186 Neb. 786 [186 N.W.2d 904, 906-907] [no contract clause violation].)

To avoid the force of this conclusion, plaintiff relies upon two cases in which state courts found the statutes under review to be unconstitutional. The first is *Board of Education of Central Sch. Dist. No. 1 v. Miles* (1965) 15 N.Y.2d 364 [259 N.Y.S.2d 129, 207 N.E.2d 181]. There, the statute gave a holder of a future interest three years in which to record it. In that case, the possibility of reverter, in the words of the appellate court, "had not matured" at the time the three-year period expired (1961) because it was not until the next year (1962) that the grantee no longer used the property for the designated purpose. (*Id.* at p. 186.) On those facts, New York's highest court found a constitutional infirmity. It reasoned no one could "have known prior to the cut-off date [in 1961] who would be parties in interest at the time when the reverter took effect. If [the state statute] be valid under these circumstances, at least, it would be necessary for unascertained persons, perhaps not even in being, to have recorded a declaration of intention to preserve a reverter which would not take effect in enjoyment until an indefinite future time. . . . Under the circumstances of the case at bar, [the statute] cannot be sustained as a Statute of Limitations since it purports to bar the remedy before the right to enforce it has matured. [Citations.]" (*Id.* at pp. 186-187.) This analysis essentially parallels the argument our plaintiff advances: in 1988—the cutoff date to record his power of termination—the future interest had not yet "matured" because it was not until 1994 that Union Pacific abandoned the railroad right-of-way.

This reasoning is not persuasive. For one thing, it fails to recognize these future interests are, by their very nature, always contingent upon a particular event occurring: the land is no longer used for the designated purpose. The fact that it is not known if and when the contingency will occur does not excuse a failure to record. Those who hold such future interests at the time the statute takes effect must recognize the contingent nature of their interests and take the step necessary (recordation) to preserve their right to be able to enforce them once the contingency occurs. The burden to do so is minimal and as long as a reasonable time period is given, the requirement is constitutional. The New York court completely failed to acknowledge these points. If its reasoning were adopted, no marketable record title act could be upheld as against a future interest which had not "matured" at the time the period to record had ended. That result would significantly undermine the public policy behind the comprehensive statutory scheme. Furthermore, the New York court did not adequately recognize the legitimate state interests furthered by the statute (making title more marketable and simplifying real estate transactions). Instead, it simply noted that, unlike recording statutes which have withstood contract clause attacks even though they impact unrecorded conveyances made before their effective dates, the state statute was not designed to prevent fraud against subsequent purchasers. That

approach simply misses the mark because there are other equally legitimate state interests which can defeat a constitutional attack on a statute.

The other case relied upon by plaintiff is *Biltmore Village v. Royal* (Fla. 1954) 71 So.2d 727 [41 A.L.R.2d 1380]. There the state statute cancelled all possibility of reverters which had been in effect for more than 21 years unless the holders brought suit within one year to enforce their rights. The Supreme Court of Florida concluded the statute violated the contract clause. It reasoned the one-year provision was insufficient because "it arbitrarily cuts off the right in one year unless suit is brought to enforce it. Such a saving provision affords no remedy to those situated appellant, where breach of the covenant has not accrued, so as to actuate the enforcement of the right of reverter." (*Id.* at p. 729.) That statute is clearly distinguishable from the one in this case because in California the holder is only required to record an intent to preserve a future interest. Once that is done, a lawsuit does not have to be brought until the event occurs.triggering the power to terminate.[10]

In sum, we are not persuaded by either of the two out-of-state cases relied upon by plaintiff.[11]

Last, plaintiff cites *Neff v. Ernst* (1957) 48 Cal.2d 628 [311 P.2d 849] for the proposition the Act violates the state contract clause and due process

[10]Section 885.050 provides: "A power of termination shall be exercised only by notice or by civil action and, if the power of termination is of record, the exercise shall be of record. The notice shall be given, and any civil action shall be commenced, within five years after breach of the restriction to which the fee simple estate is subject, or such longer period as may be agreed to by the parties by a waiver or extension recorded before expiration of that period."

[11]A treatise offers the following cogent criticism of these two out-of-state authorities. "[I]t appears that the invalidating decisions (particularly the New York decision) are unnecessarily restrictive. When one considers that these decisions involve preexisting reversionary interests, it is immediately apparent how damaging they really are to an efficiently functional conveyancing system for today. These old interests have an inordinately detrimental effect on conveyancing and the marketability of titles. They have usually outlived any legitimate purpose and unnecessarily restrain the reasonable and proper development of land. Yet it is precisely these interests that are protected by the New York and Florida decisions. Those decisions fail to apply a realistic balancing of the conflicting interests. In fact, they elevate the reversionary interest of the original grantor to such a level that it makes the ultimate removal of these stale, title clogging interests impossible. Furthermore, the New York decision did not adequately confront the distinguishing characteristic of New York's statute. Specifically, unlike the Florida statute, New York's statute allowed the owner of an opportunity to preserve the interest if he thought it to be of value. As additional authority that such a restrictive approach is not required by the federal Constitution, the United States Supreme Court has held, in a related area, that a state may require the holder of a stale and unused mineral interest to periodically preserve it, or, in the absence thereof, lose the ability to enforce it in the future." (14 Powell on Real Property (2002) Recording Acts and Priorities, § 82.04[2], pp. 82-133 to 82-134, fn. omitted.)

clause. This reliance is misplaced because contrary to what plaintiff suggests, our state's highest court did not reach and decide any constitutional issues in that case. The statute at play (former § 812, repealed in 1980 but reenacted in substance in Sts. & Hy. Code, § 8353) held that the vacation or abandonment by law of a public street resulted in an extinguishment of any easement in the street unless the holder recorded within two years a notice of intent to claim the easement. The statute contained an exception to the recordation requirement if use of the easement was necessary to access the private lot from or to a public street. The trial court concluded the "necessity exception applied" and that were the statute applied to any easement "vested" in the plaintiffs before its enactment, it would violate the contract and due process clauses of the state Constitution. (*Neff v. Ernst, supra,* 48 Cal.2d at p. 636.) The Supreme Court held the easements came within the statutory "necessity exception." The court then stated: "[T]hey are also private easements appurtenant to [the plaintiff's] property of which they could not be divested except by purchase or agreement or by compensation from the sovereign." (*Id.* at p. 637.) Because the plaintiffs prevailed on the theory of the statutory exception, the court's brief statement obliquely alluding to constitutional theory was not necessary or essential to the holding and therefore is dicta. (*Quackenbush v. Superior Court* (2000) 79 Cal.App.4th 867, 874 [94 Cal.Rptr.2d 282].)

 In sum, the Act does not violate the contract clause of either the state or federal Constitution. It furthers a legitimate state interest, imposes only a minor burden on the holder of a future interest, and gives a reasonable period (five years) in which to comply.

*Due Process*

Section 1 of the Fourteenth Amendment to the federal Constitution provides in part: "[N]or shall any state deprive any person of . . . property, without due process of law." In a similar vein, article I, section 7, subdivision (a) of our state Constitution provides: "A person may not be deprived of . . . property without due process of law . . . ."

 Although the due process clause acts to limit state action, it is not an absolute prohibition on state legislation which may adversely affect property rights. Determination of whether a specific law violates due process involves a balancing test between the interest impinged and the state interest furthered by the statute. (See, e.g., *Texaco, Inc. v. Short, supra,* 454 U.S. 516, 526 [102 S.Ct. 781, 790] ["We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the

performance of reasonable conditions that indicate a present intention to retain the interest"].)

Plaintiff does not explain with particularity his due process attack on the statute.

If he is complaining that "its retroactive provisions unreasonably interfered with closed transactions" such as the 1901 conveyance, the statute will be upheld if it furthers a legitimate legislative purpose by a rational means.[12] (*General Motors Corp. v. Romein* (1992) 503 U.S. 181, 191 [112 S.Ct. 1105, 1112, 117 L.Ed.2d 328]; *Pension Benefit Guaranty Corp. v. R. A. Gray & Co.* (1984) 467 U.S. 717, 730 [104 S.Ct. 2709, 2718, 81 L.Ed.2d 601].) For the reasons explained above in regard to the contract clause analysis, that due process test is met. (See, e.g., *Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. 398, 448 [54 S.Ct. 231, 243] ["What has been said [in regard to the contract clause claim] is also applicable to the contention presented under the due process clause"].)

If he is complaining that the state is improperly depriving him of a vested property without due process of law, the claim fails. The Act does not deprive a party of property; it simply imposes the requirement that the holder of a future interest record within a five-year period an intent to preserve that right. If a property right (the future interest) is "lost," it is not because it is "taken" by the government. It expires because its holder failed to record. As the Supreme Court of Minnesota explained in rejecting a constitutional attack on its state's marketable record title act which gave only a nine-month period to record: "The recordation provisions of the act provide for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. 'The constitutionality of imposing this duty would seem to have been settled beyond question by the decisions sustaining retroactive recording statutes.' [Citations.]" (*Wichelman v. Messner* (1957) 250 Minn. 88 [83 N.W.2d 800, 817, 71 A.L.R.2d 816].)

In rejecting a due process attack on a statute which gave the holder of a future interest only one year to record, the Supreme Court of Iowa wrote:

[12] A 1982 addition to the Law Revision Commission Comment explicitly addressed the issue of retroactivity. It states: "The declaration of public policy is intended to demonstrate the significance of the state interest served by this title and the importance of the retroactive application of the law to the effectuation of that interest. [Citation.] [¶] A statute may require recordation of previously executed instruments or of extensions of time if a reasonable time is allowed for recordation. [Citation.] The burden on holders of old interests of recording a notice of intent to preserve or an extension of time is outweighed by the public good of more secure land transactions. [Citation.]" (Cal. Law Revision Com. com., 7 West's Ann. Civ. Code (2002 supp.) foll. § 880.020, p. 175.)

"[The statute] does not abolish or alter any vested right. Rather, it modifies the procedure for effectuation of the remedy by conditionally limiting the time for enforcement of the right. [¶] . . . [The statute] did not serve to unconstitutionally deprive defendants of any vested rights." (*Presbytery of Southeast Iowa v. Harris* (Iowa 1975) 226 N.W.2d 232, 242, cert. den., 423 U.S. 830 [96 S.Ct. 50, 46 L.Ed.2d 48].)

Fifty years ago a prominent scholar in this area accurately capsulized the pertinent analysis. He wrote: "[T]hese statutes do not destroy those interests and claims directly; it is the failure on the part of their owners to take the simple and inexpensive step of preserving them by recording a notice of their existence that effects the destruction." (Aigler, *Constitutionality of Marketable Title Acts* (1951) 50 Mich. L.Rev. 185, 199.)

Because our state's statute provides a reasonable time period (five years) to record and furthers legitimate state interests, it does not offend due process. (See also *Trustees of Schools of Township No. 1 v. Batdorf* (1955) 6 Ill.2d 486 [130 N.E.2d 111, 114-115] [Supreme Court of Illinois rejects contract clause and due process attacks on state statute that gave holder of possibility of reverter one year to record]; *Hiddleston v. Nebraska Jewish Education Society, supra,* 186 N.W.2d 904, 906-907 [no violation of due process]; *Town of Brookline v. Carey* (1969) 355 Mass. 424 [245 N.E.2d 446, 448] [no violation of due process].)

## DISPOSITION

The judgment is reversed to the extent it quieted title on behalf of respondent Gary M. Severns in the railroad right-of-way. The parties to bear their own costs on appeal.

Epstein, J., and Curry, J., concurred.

A petition for a rehearing was denied September 30, 2002, and the opinion was modified to read as printed above.