Filed 11/23/15  Syverson v. Kuhn CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KORTNEY SYVERSON,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>R. DAVID KUHN, Individually and as Trustee, etc.,<br><br>        Defendant, Cross-complainant and Appellant;<br><br>MICHAEL B. EMERY, Individually and as Trustee, etc. et al.,<br><br>        Defendants and Appellants. | D067263<br><br><br><br>(Super. Ct. No. 37-2011-00102504-CU-OR-CTL) |

        APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

        Vantage Law Group and Michael H. Riney for Defendant, Cross-complainant and Appellant R. David Kuhn and for Defendants and Appellants Michael B. Emery and Linda G. Emery.

        Steven J. Roberts and Steve J. Roberts for Plaintiff, Cross-defendant and Respondent.

This case involves four northern and four southern neighboring hillside properties. Grant deeds on the southern properties contained restrictions limiting residences thereon to a single story. We conclude the use restrictions, which were enforceable by a power of termination, expired due to the northern property owners' failure to record a notice of intent to preserve their interest under the Marketable Record Title Act (Civil Code, § 880.020 et seq.) (the Act). (Undesignated statutory references are to the Civil Code.) We also conclude the use restrictions were not alternatively enforceable as equitable servitudes.

FACTUAL AND PROCEDURAL BACKGROUND

*The Parties*

R. David Kuhn, Michael B. Emery, and Linda G. Emery (together, Appellants) own four hillside lots in the Clairemont area of San Diego, California (the northern lots). The northern lots have views of Mission Bay. In 2009, Kortney Syverson purchased a home to the south of the northern lots, which he intended to remodel to add a second story. Janice Sopher, Bradley and Kim Johnson, and Ruth Crowell also own properties south of the northern lots (together with Syverson's property, the southern lots).

Use restrictions in grant deeds on Syverson's property limited any residence on the property to a single story. Syverson sued Appellants and the owners of the other southern lots to invalidate the restrictions on his property. The trial court entered default against the southern lot owner defendants. They are not parties to this appeal. Thus, this dispute is between Syverson (owner of one of four southern lots) and Appellants (owners of the northern lots).

*History of the Properties*

In 1949, Betty Rotner acquired the southern lots through two grant deeds from Evelyn Wurzell and Union Title Insurance and Trust Company. Both deeds contained use restrictions that ran with the land and limited the properties such that they could "be used for residential purposes only and such residence will be a single story with shed-type roof, or if gabled roof, the height of said gabled roof to be no more than two feet" (Union/Wurzell Restrictions). A violation of these restrictions would cause the land to revert and revest in the grantor, its successors, or assigns.

Rotner subsequently transferred Lot 5, which is now Syverson's property, to Valentine Putman and Alice Putman. That grant deed also included restrictions (Rotner Restrictions): "Any residence placed on this property must be single story with shed type roof or with a Gable roof providing the Gable shall not be more than two feet high." (The Rotner Restrictions and Union/Wurzell Restrictions are collectively referred to as the Use Restrictions.)

In 1951, Kuhn's parents purchased the northern lots. Approximately one year later, they sold two of the four northern lots to the Emerys' family. The northern lots have remained in the Kuhn and Emery families since that time.

Syverson acquired his property in 2009. The grant deed to him did not include or reference the Use Restrictions.

*The Prior Action*

In 1976, Sopher's predecessor in title, John P. Suitts, Jr., filed an action to invalidate the Union/Wurzell Restrictions (the Prior Action). Michael Emery was a party to that action. Suitts alleged the grant deed upon which he took title did not reference the

Union/Wurzell Restrictions. He argued the restrictions should not be interpreted as conditions subsequent with right of reverter and instead were covenants, which could not be enforced against him.

Michael Emery argued in his trial brief that the Union/Wurzell Restrictions "reserved a valid and enforceable reversionary interest (called a 'right of re-entry' or 'power of termination') in the grantors" and their successors and assigns. He specifically took the position that the Union/Wurzell Restrictions did not create restrictive covenants or equitable servitudes because those concepts leave no reversionary interest in the grantor and thus the grantor could not regain title upon a breach.

In 1977, the trial court entered judgment, concluding the Union/Wurzell Restrictions were valid and enforceable conditions subsequent. The trial court found the conditions subsequent "reserved in the Grantors, their heirs, successors and assigns, a reversionary interest ('right of re-entry')," which was now held by Michael Emery.

*The Current Action*

In 2011, Syverson sued Appellants and the other owners of the southern lots for declaratory relief to invalidate the Use Restrictions. In his original complaint, Syverson stated that "[d]uring the course of the purchase of [his] [p]roperty, [he] became aware of a grant deed recorded on August 26, 1949, which transferred the [p]roperty from Evelyn Rose Wurzell to Betty Rotner." That grant deed contained the Union/Wurzell Restrictions. Syverson subsequently amended his complaint multiple times. In the operative second amended complaint, Syverson asserted causes of action for declaratory relief and to quiet title. He alleged that to the extent the court construed the Use Restrictions as conditions subsequent with right of reverter, they were invalid, void and

4

unenforceable under the Act, and enforcement of the Use Restrictions was unjust, oppressive and inequitable.

Kuhn cross-complained against Syverson, alleging Syverson planted a row of cypress trees along the border of Syverson's and Kuhn's properties, which partially obstructed Kuhn's view of Mission Bay. Kuhn also sought declaratory relief regarding utility and sewer easements over Syverson's property. The Emerys were not parties to the cross-complaint.

In May 2013, Syverson moved for summary adjudication on each cause of action in the second amended complaint. He argued that because the judgment in the Prior Action concluded the Use Restrictions were conditions subsequent with right of reverter, the Use Restrictions expired under the Act due to Appellants undisputed failure to record a notice of intent to preserve their interest. Syverson also asserted that he was unaware of the Use Restrictions until after he purchased his property.

Appellants opposed summary adjudication, arguing the Use Restrictions were enforceable as an equitable servitude and thus a notice of intent to preserve their interest was not required under the Act. Appellants also argued that although the Use Restrictions were not technically drafted as an equitable servitude, they could alternatively be enforced as such because Syverson purchased his property with actual or constructive notice of the restrictions. Appellants contended Syverson had constructive notice based on the undisputed fact that the deeds containing the Use Restrictions were recorded before Syverson purchased his property. To support their argument concerning Syverson's actual notice, Appellants pointed to the statement in his original complaint

5

that he became aware of the 1949 deed from Wurzell to Rotner "during the course of the purchase" of his property.

The trial court granted summary adjudication in favor of Syverson, finding the Use Restrictions were unenforceable. The court concluded that the Use Restrictions expired as a result of Appellants' failure to record a notice of intent to preserve their interest as required under the Act. The court further found that the Use Restrictions could not be enforced as an equitable servitude because they expired before Syverson purchased his property due to the passage of time and lack of recording of a notice of intent under the Act, and Syverson denied knowing of the restrictions. The court concluded that Syverson's statement in his original complaint that he became aware of the Union/Wurzell Restrictions during the course of his purchase was insufficient to create a triable issue of fact regarding notice. Lastly, the court found that Appellants were collaterally estopped from claiming their interest constituted an equitable servitude because they argued the opposite in the Prior Action.

DISCUSSION

I. *Appealability*

Appellants' notice of appeal indicates their appeal was taken from a judgment after an order granting summary adjudication and a subsequent stipulation. Based on the stipulation, the judgment dismissed Kuhn's cross-claim for private nuisance without prejudice pursuant to the terms of the parties' settlement agreement. That settlement agreement provided that if Appellants prevail on their appeal, and "the matter is sent back to the trial court for trial, the Judgment shall be of no force and effect and is voided."

6

The Court previously asked Appellants to submit letters explaining why this appeal should not be dismissed on the ground the appealed judgment was not yet final due to Kuhn's dismissed yet unresolved cross-claim for private nuisance. After considering the parties' responses, the Court concluded the appeal could proceed as to the Emerys because they were not parties to the cross-complaint and the judgment was final as to them. As to Kuhn, the Court deferred consideration of his request to treat his appeal as a petition for writ review. We now consider that issue.

Kuhn argues that his claim for private nuisance was collateral to the main issue in the case of whether the Use Restrictions are enforceable. He claims the summary adjudication in favor of Syverson "substantially mooted" his private nuisance claim because "the proposed second story addition to . . . Syverson's property would have the same practical impact as a ten foot hedge adjacent to . . . Kuhn's property." Kuhn also contends he was aggrieved by the summary adjudication order and would potentially be bound by the outcome of the Emerys' appeal.

Resolution of the Emerys' appeal will necessarily impact Kuhn as the same facts and issues are involved. Moreover, judicial economy would not be served by deciding the matters of these Appellants separately. Accordingly, we exercise our discretion to treat Kuhn's appeal as a petition for writ review and resolve Appellants' claims in a single proceeding. (See *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 710, fn. 1.)

## II. *Standard of Review*

In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. (*Branco v. Kearny Moto Park, Inc*. (1995) 37 Cal.App.4th 184, 189 (*Branco*).) In practical effect, we assume the

7

role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122.)

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1250.) Because the granting of a summary judgment motion "involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion." (*Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1408.) We strictly construe the evidence of the moving party and liberally construe that of the opponent, "and any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Branco*, *supra*, 37 Cal.App.4th at p. 189.)

The law of summary judgment provides courts with a mechanism to cut through the parties' pleadings to determine whether trial is in fact necessary to resolve their dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "If summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct." (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836.)

### III. *Marketable Record Title*

A. The Act

In 1982, the Legislature passed the Act, which was a comprehensive statutory scheme "to simplify and facilitate real property title transactions in furtherance of public

policy by enabling persons to rely on record title."  (Civ. Code, § 880.020, subd. (b).)  The Legislature declared that "real property is a basic resource of the people of the state and should be made freely alienable and marketable."  (§ 880.020, subd. (a)(1).)  "Interests in real property and defects in title created at remote times, whether or not of record, often constitute unreasonable restraints on alienation and marketability of real property because the interests are no longer valid or have been abandoned or otherwise become obsolete."  (§ 880.020, subd. (a)(2).)

As part of the statutory scheme, the Legislature abolished fees simple determinable and possibilities of reverter.  (§ 885.020.)  "Every estate that would be at common law a fee simple determinable is deemed to be a fee simple subject to a restriction in the form of a condition subsequent.  Every interest that would be at common law a possibility of reverter is deemed to be and is enforceable as a power of termination."  (*Ibid*.)  As a result, a person entitled to take advantage of a breach of condition does not have an immediate right to the property; instead, "the grantee's estate does not terminate unless the power [of termination] is exercised in a timely manner by the person holding the power."  (3 Miller & Starr, Cal. Real Estate (3d ed. 2011) Estates; Restraints; Perpetuities, § 9:5, pp. 9-12; see also § 885.010 [defining "power of termination"].)

"To achieve [the public policy] goals, the Legislature adopted a recordation requirement for certain types of interests, including powers of termination.  (§ 885.010 et seq.)  Failure to record interests within a given period of time results in expiration of the interest.  These times for expiration 'are absolute and apply notwithstanding any disability or lack of knowledge of any person. . . .'  (§ 880.250, subd. (a).)"  (*Walton v. City of Red*

9

*Bluff* (1991) 2 Cal.App.4th 117, 128 (*Walton*).) " 'The recordation provisions of the [A]ct provide for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished.' " (*Severns v. Union Pacific Railroad Co.* (2002) 101 Cal.App.4th 1209, 1227 (*Severns*).)

"An interest may be preserved by the timely recordation of a notice of intent to preserve the interest and these notices may be given consecutively: Perpetuity of interest is not prohibited. [Citation.] Any person who claims an interest may record the notice, a form of which is provided in the statute. (§§ 880.320, 880.340.) [¶] . . . A power of termination expires at the later of: (1) 30 years after recordation of the instrument evidencing the power, (2) 30 years after recordation of the last notice of intent to preserve the power. (§ 885.030.)" (*Walton*, *supra*, 2 Cal.App.4th at p. 128, fn. omitted.) If the period to record the notice expires before, on, or within five years after the operative date of the statute, the period is extended until five years after the operative date. (§ 880.370.)

"When a future estate in real property is subject to a power of termination, the power becomes unenforceable when it expires." (3 Miller & Starr, *supra*, § 9:8, p. 9-23.) In that regard, section 885.060 provides:

> "(a) Expiration of a power of termination pursuant to this chapter makes the power unenforceable and is equivalent for all purposes to a termination of the power of record and a quitclaim of the power to the owner of the fee simple estate, and execution and recording of a termination and quitclaim is not necessary to terminate or evidence the termination of the power.
>
> "(b) Expiration of a power of termination pursuant to this chapter terminates the restriction to which the fee simple estate is subject and makes the restriction unenforceable by any other means, including, but not limited to, injunction and damages.

10

> "(c) *However, subdivision (b) does not apply to a restriction for which a power of termination has expired under this chapter if the restriction is also an equitable servitude alternatively enforceable by injunction.* Such an equitable servitude shall remain enforceable by injunction and any other available remedies, but shall not be enforceable by a power of termination." (Italics added.)

B. Analysis

The Use Restrictions in this case were drafted in the form of conditions subsequent with right of re-entry. Under the Act, the right of re-entry was transformed into a power of termination. (§ 885.020.) In order to preserve the power of termination, Appellants were required to record a notice of intent to preserve their interest. (§ 880.350.) Generally, a notice of intent must be recorded within 30 years of the date the instrument evidencing the power of termination was recorded or after the date a notice of intent was recorded. (§§ 880.030, 885.030.) However, for interests that had already expired or would expire within five years of the Act's effective date, January 1, 1983, the Act provides a five-year grace period. (§ 880.370; Cal. Const., art. IV, § 8, subd. (c)(1); *Severns*, *supra*, 101 Cal.App.4th at p. 1220.)

The Union/Wurzell Restrictions are set forth in deeds recorded in 1949. The Rotner Restrictions are set forth in a deed recorded in 1955. Thus, the 30-year recording period expired in 1979 for the Union/Wurzell Restrictions and 1985 for the Rotner Restrictions. Allowing for the Act's five-year grace period, Appellants were required to record their notice of intent to preserve their interest in the Use Restrictions by 1988. Appellants did not dispute that they failed to record a notice of intent under the Act to preserve their interest in the Use Restrictions. They assert, however, that they were not required to record a notice of intent to preserve their property interest because the Use

11

Restrictions were alternatively enforceable as an equitable servitude and thus fall within the exception set forth in section 885.060, subdivision (c). Accordingly, we consider whether the Use Restrictions were alternatively enforceable as an equitable servitude.

IV. <em>Equitable Servitudes</em>

A. General Principles of Equitable Servitudes

"Under the law of equitable servitudes, courts may enforce a promise about the use of land even though the person who made the promise has transferred the land to another. [Citation.] The underlying idea is that a landowner's promise to refrain from particular conduct pertaining to land creates in the beneficiary of that promise 'an equitable interest in the land of the promisor.' [Citations.] The doctrine is useful chiefly to enforce uniform building restrictions under a general plan for an entire tract of land or for a subdivision." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 379 (*Nahrstedt*).) Although the doctrine of equitable servitudes is often invoked in cases involving restrictions imposed pursuant to a general plan for improving an entire tract or real estate subdivision, it is not limited to restrictions imposed in common interest developments. (*Marra v. Aetna Construction Co.* (1940) 15 Cal.2d 375, 378 (*Marra*).)

There are several requirements that must be met before a covenant will be enforced as an equitable servitude. First, the covenant must be stated in a written agreement. (Code Civ. Proc., § 1971; § 1624, subd. (a)(3); *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 358 (*Citizens*).) Second, the contracting parties must have expressed their intent to bind their successors. (*Citizens*, at pp. 357-358.) Third, the agreement must describe the property to be affected thereby. (*Wing v. Forest Lawn Cemetery Ass'n* (1940) 15 Cal.2d 472, 483; *Martin v. Ray* (1946) 76

12

Cal.App.2d 471, 479.) Fourth, the covenantor's successor must have had actual or constructive notice of the covenant at the time it acquired the covenantor's property. (*Citizens*, at p. 363.) Finally, the equities must support the issuance of relief. (*Marra*, *supra*, 15 Cal.2d at p. 378.)

B. Analysis

To support their equitable servitude argument, Appellants primarily rely on *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693 (*MacDonald*). In that case, a prior owner of a golf course conveyed a strip of land along its sixth fairway to the predecessor of an adjacent land owner. (*Id.* at p. 696.) The property served as a rough for the sixth fairway and golf balls fell on it every day. (*Ibid.*) Thus, to prevent interference with the property's use for golfing purposes, the deed of conveyance contained building restrictions. (*Id.* at p. 696.) The plaintiffs argued the deed restrictions were not enforceable against subsequent purchasers because the original deed did not describe the benefited property. (*Id.* at p. 699.) Recognizing the argument was technically correct, the court nevertheless held that deed restrictions drafted as conditions subsequent with right of reentry "may be enforced . . . as equitable servitudes against transferees acquiring the property with actual or constructive notice of the restrictions, when failure to enforce the restrictions would produce an inequitable result." (*Id.* at pp. 699-700.)

Notably, *McDonald* differs in a significant respect in that it did not involve a power of termination and the Act as the Act did not exist at the time the court decided the case. Regardless, Appellants argue that based on *MacDonald*, the Use Restrictions were enforceable as an equitable servitude so long as Syverson had actual or constructive

13

notice of the restrictions, they were assigns of a grantor, and Syverson could not show enforcement would produce an inequitable result.

Appellants are correct in that notice is an essential requirement for an equitable servitude. (*Citizens*, *supra*, 12 Cal.4th at p. 365-366; *McDonald, supra,* 72 Cal.App.3d at p. 699-700.) They claim Syverson had constructive notice based on the recorded deed restrictions and a triable issue of fact existed as to actual notice because Syverson stated in his original complaint that he learned of the grant deed containing the Use Restrictions during the course of the purchase of his property.

Appellants' argument that Syverson had notice of the Use Restrictions, which is based solely on the deeds containing the restrictions, is flawed because the Use Restrictions expired in 1988. In general, "[a] 'duly recorded' document gives constructive notice unless the interests described in the recorded document are released, discharged, or conveyed to the property owner by another recorded document. It remains in the public records, and imparts constructive notice, even though it may be unenforceable." (5 Miller & Starr, Cal. Real Estate (3d ed. 2011) Recording and Priorities, § 11:67, p. 11-121.) However, an exception exists where the interest expired by statute. (*Id.* at § 11:67, pp. 11-121 to 11-122.) Under the Act, "certain interests reflected by a recorded document become unenforceable and no longer impart constructive notice after the passage of certain prescribed periods of time." (*Id.* at § 11:68, p. 11-213.)

As relevant here, the Act provides that the "[e]xpiration of a power of termination . . . makes the power unenforceable and is equivalent for all purposes to a termination of the power of record and a quitclaim of the power to the owner of the fee simple estate, and *execution and recording of a termination and quitclaim is not*

*necessary to terminate or evidence the termination of the power*." (§ 885.060, subd. (a), italics added.)  Thus, once Appellants' power of termination expired in 1988, it resulted in a termination of the power of record and quitclaim of the interest to Syverson.  As such, recordation of the Use Restrictions no longer imparted constructive notice after expiration of the power of termination as provided under the Act.

Similarly, even if Syverson had actual notice of the deeds containing the Use Restrictions, he only had notice that his chain of title included expired Use Restrictions. In the event that the deeds triggered a duty of inquiry to determine the validity of the restrictions, such duty only extended to what he could have discovered based on a reasonable investigation.  (See *Walgren v. Dolan* (1990) 226 Cal.App.3d 572, 579; *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1020.) Assuming without deciding that a reasonable investigation included uncovering the Prior Action, Syverson would have learned that the trial court had previously concluded the Use Restrictions constituted conditions subsequent with a right of re-entry, which subsequently became a power of termination under the Act and required recordation of a notice to preserve the interest.  Syverson would have further learned that Michael Emery, the defendant in the Prior Action, expressly argued that the Use Restrictions were not restrictive covenants or equitable servitudes.  Indeed, Michael Emery had argued the deeds could not "reasonably be construed as creating covenants or servitudes." Accordingly, an investigation would have reinforced that the Use Restrictions constituted a power of termination under the Act requiring a notice of intent to preserve the interest and would not have put Syverson on notice of an interest based on an equitable servitude.

15

The parties have not pointed to anything in the record of title, other than the deeds containing the expired Use Restrictions, that would have put Syverson on constructive notice of Appellants' claimed interest in Syverson's property. Likewise, Appellants have not shown or argued that Syverson had actual notice prior to his purchase based on anything other than the deeds containing the expired Use Restrictions.

We recognize that the notice requirement is somewhat circular in that the analysis leads us back to the expiration of the Use Restrictions under the Act. We also acknowledge that we should not construe a statute to render any provision therein useless. (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 354.) Thus, we must consider whether our conclusion that Syverson's lack of notice despite the recorded deeds in his chain of title was fatal to Appellants' claim of an equitable servitude renders subdivision (c) of section 885.060 meaningless. Based on our review of the legislative history, we conclude it does not.

The Legislature added subdivision (c) to section 885.060 in 1990. (Stats. 1990, c. 1114 (A.B. 3220), § 1.) The purpose of adding that subdivision was "to prevent [section 885.060] from being applied to nullify property restrictions in the covenants, conditions, and restrictions (CCRs) of numerous homeowner associations." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 3220 (1989-1990 Reg. Sess.) as amended May 15, 1990 (Judiciary Committee Report).) The Judiciary Committee Report explained that a homeowners association sponsored the bill because hundreds of homeowners associations had failed to record notices of intent to preserve their interests in their CCRs and, as a result, lost their ability to enforce their CCRs. (*Ibid*.) Thus, proponents of the bill sought to "reaffirm the right of homeowner associations to continue to enforce

16

reasonable CCR restrictions by deeming the restrictions as equitable servitudes rather than as a condition giving rise to a power of termination." (*Ibid.*)

In the case of homeowners associations, the Legislature chose equitable servitude law as the standard for enforcing CCRs. (*Nahrstedt*, *supra*, 8 Cal.4th at p. 380.) Section 885.060, as originally enacted, "removed the ability of homeowners associations to enforce longstanding . . . [CCRs] unless the association affirmatively preserved its interest." (Judiciary Committee Report, *supra*.) By adding subdivision (c) to section 885.060, the Legislature rectified the problem and reinforced the ability of homeowners associations to enforce their CCRs without a notice of intent to preserve their interest therein. Nothing in our analysis of this case changes that solution or result. Although not necessarily limited to the context of homeowners associations' CCRs, we see nothing in the legislative history suggesting that subdivision (c) applies to situations as in this case where landowners are attempting to escape the requirements of the Act by seeking to alternatively enforce deed restrictions as equitable servitudes.

In any event, even if the notice requirement was not fatal to Appellants' claim of an equitable servitude, the Use Restrictions do not meet other requirements of equitable servitudes.

In order to establish an equitable servitude, the deed containing the restrictions must contain "a proper expression of intent to create an equitable [servitude]; that is, reference to a common plan of restriction or indication of an agreement between the grantor and grantee that the conveyed lot to be taken subject to some such plan, but also . . . 'some designation or description of what is an essential factor, namely, the dominant tenement.' " (*Wing v. Forest Lawn Cemetery Ass'n*, *supra*, 15 Cal.2d at p. 480.)

17

" 'There should be some written evidence, either in the form of a plat [or] otherwise, delineating or pointing out the extent of the property affected by the restrictions.' " (*Ibid*.) " '[P]rovisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of free use of the land.' " (*Friesen v. City of Glendale* (1930) 209 Cal. 524, 529.)

In this case, the Union/Wurzell Restrictions neither described the dominant tenement nor stated that the restrictions were for the benefit of other parcels pursuant to a common plan. To the contrary, the Union/Wurzell Restrictions stated they were "operative as covenants running only with the land covered by each separate and particular lot of parcel hereby demised, but *shall not inure to the benefit or detriment of any owner or owners of adjoining or adjacent lots, lands, or parcels in anywise or manner whatsoever*." (Italics added.) Similarly, the Rotner Restrictions did not identify a dominant tenement and common plan.

If we were to accept Appellants' argument that the Use Restrictions are alternatively enforceable as equitable servitudes, we would run afoul of the purpose of the Act. The Legislature enacted the Act to clear "interests in property and defects in titles created at remote times, whether or not of record" because such interests and defects "constitute unreasonable restraints on alienation and marketability of real property," often resulting in delays and litigation to clear titles. (§ 880.020, subd. (a)(2)-(3).) The Legislature declared that "titles should be determinable to the extent practicable from an examination of recent records only." (§ 880.020, subd. (a)(4).) "The burden on holders of old interests of recording a notice of intent to preserve or an extension of time is outweighed by the public good of more secure land transactions." (Cal. Law Revision

18

Com. com., 7 West's Ann. Civ. Code (2007 ed.) foll. § 880.020, p. 422.) If landowners who allowed their interest to lapse, such as Appellants in this case, could run to court to seek an injunction to alternatively enforce the interest as an equitable servitude, it would render the Act's purpose nugatory. Instead, we conclude the exception set forth in subdivision (c) of section 885.060 only applies to restrictions which comply with the requirements of equitable servitudes and is not a savings clause for landowners who through inadvertence, neglect, or otherwise allowed their power to termination to expire.

Because the Use Restrictions expired based on Appellants' failure to record a notice of intent to preserve their interest and Appellants failed to show a triable issue of fact exists as to whether the Use Restrictions are equitable servitudes, the trial court properly granted summary adjudication in Syverson's favor.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.


McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.


19